UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

BELARMINO CRISOSTOMO,     :
     Plaintiff,         :
                         :
     v.                     :     No. 5:24-cv-0937
                         :
WESTLAKE FINANCIAL, INC.,     :
     Defendant.        :

_____

**O P I N I O N**
**Motion to Dismiss, ECF No. 5 – Granted**

**Joseph F. Leeson, Jr.**                                  **June 26, 2024**
**United States District Judge**

## I.    INTRODUCTION

This case involves a credit reporting dispute. Plaintiff Belarmino Crisostomo,

representing himself *pro se*, filed suit against Defendant Westlake Services, LLC[1] for reporting

an inaccurate tradeline on his credit report. Westlake responded by filing a motion to dismiss,

arguing Crisostomo's complaint lacks sufficient factual allegations to support his claim. For the

following reasons, the motion is granted with leave to amend.

## II.    BACKGROUND

The following facts are alleged in the Complaint.

In June of 2023, Crisostomo sent a letter to three credit reporting agencies ("CRAs")—

Experian, TransUnion, and Equifax—disputing an inaccurate tradeline on his credit report.

Compl. at ¶ 13-14, ECF No. 1. The tradeline states Crisostomo is responsible for either a

---

[1]    Although the Complaint refers to Defendant as Westlake Financial, Inc., Westlake's
proper business name is Westlake Services, LLC. *See* Compl.; *see also* Mot. Dismiss, ECF No.
5.

"collection" or a "charge off". *Id.* at ¶ 12; Resp., ECF No. 10, at ¶ 1.[2] The CRAs then forwarded the dispute to Westlake, who had furnished the disputed tradeline. Compl. at ¶ 16-17. In October of 2023, Crisostomo discovered an updated copy of his credit report still listed the inaccurate tradeline. *Id.*

On March 3, 2024, Crisostomo filed a Complaint in this Court against Westlake. *See* Compl. Crisostomo claims Westlake negligently or willfully violated the Fair Credit Reporting Act ("FCRA") by reporting an inaccurate or misleading tradeline on his credit report, failing to reasonably investigate the tradeline, and then failing to amend the tradeline. *Id.* Westlake filed a motion to dismiss for failure to state a claim. *See* Mot. Dismiss, ECF No. 5. Westlake requested this Court issue an order dismissing Crisostomo's complaint with prejudice. *Id.* at ¶ 1. On March 22, 2024, Crisostomo filed a response in opposition to Westlake's motion. *See* Resp.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss under Rule 12(b)(6) – Review of Applicable Law

In rendering a decision on a Rule 12(b)(6) motion to dismiss, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[2]    A "charge off" is a notation on a credit report indicating "'(an account receivable) [is being treated] as a loss or expense because payment is unlikely.'" *Butnick v. Experian Info. Solutions, Inc.,* No. 20-1631, 2021 U.S. Dist. LEXIS 21926, at *9 (E.D.N.Y. Feb. 4, 2021) (quoting *Charge Off, Black's Law Dictionary* (11th ed. 2019).

555 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Moreover, "however inartfully pleaded," complaints by *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks and citation omitted).

**B.      Fair Credit Reporting Act ("FCRA") Claim under § 1681s-2(b) – Review of Applicable Law**

The FCRA was created to address a "systemic problem" of inaccurate credit reporting by "ensur[ing] fair and accurate credit reporting, promot[ing] efficiency in the banking system, and protect[ing] consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 62 (2007).

The FCRA requires consumer reporting agencies ("CRAs")—like Experian—to notify "furnishers" once a consumer disputes a tradeline reported by that furnisher. *See* 15 U.S.C. § 1681s-2. "Furnishers" report information about a consumer to CRAs, *id.*, whereas a "tradeline" is information listed on the consumer's credit report. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 712 (3d Cir. 2010) (stating creditors report "account information to a credit agency", which CRAs use to decide which "data that will appear on the consumer's credit report"); *see also*

*Seamans v. Temple Univ.*, 744 F.3d 853, 857 (3d Cir. 2014) (describing a "trade line" as data summarized on the plaintiff's credit report). Once a furnisher receives notice that its tradeline is disputed, the furnisher must reasonably investigate that consumer's "bona fide dispute" to determine whether the furnished information is accurate. *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011) (stating a furnisher's statutory duty to investigate disputed information is not triggered until the CRA "[which] receive[d] notice of a dispute from any consumer" notifies the furnisher directly) (citation omitted); *Horsch v. Wells Fargo Home Mrtg.*, 94 F. Supp. 3d 665, 679 (E.D. Pa. Mar. 24, 2015) (noting furnishers are in "the best position to determine" when a dispute is bona fide); *Shareef v. Capital*, No. 21-3858, 2022 U.S. Dist. LEXIS 64512, at *7 (E.D. Pa. Apr. 7, 2022). Then, the furnisher must "report the results of the investigation to both the [CRA] that provided notice and, if the investigation finds that the information is incomplete or inaccurate, to all other [CRAs] to which the furnisher provided the disputed information." *Kirtz v. Trans Union LLC*, 46 F. 4th 159, 162 (3d Cir. 2022) (citing 15 U.S.C. § 1681s-2(b)(1)) (internal quotation marks omitted). Consumers may sue furnishers for willfully or negligently failing to reasonably investigate and fix inaccurate or misleading tradelines. 15 U.S.C. §§ 1681n, o, s-2(b); *Seamans*, 744 F.3d at 864. "Willful" violations include both "knowing" violations and violations which are the result of "reckless disregard." *Safeco Ins. Co. of Am.,* 551 U.S. at 58-60.

　　To meet their burden, first, consumers suing under the FCRA "must prove that . . . [the consumer] notified . . . a [CRA] of the dispute under § 1681i, that the [CRA] notified the party who furnished the information . . . and that the party who furnished the information failed to [reasonably] investigate or rectify the disputed charge." *Horsch*, 94 F. Supp. 3d at 672 (cleaned up). "Unreasonable investigations" are when "the possible harm of reporting inaccurate

information" outweighs "the cost of [the furnisher] verifying the accuracy of the information." *Seamans,* 744 F.3d at 865 (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432-33 (4th Cir. 2004)) (adopting the Fourth Circuit's balancing test to determine whether an "investigation" under the FCRA was "reasonable"). Courts typically construe a consumer's complaint in favor of showing an investigation was unreasonable. *See Ostrander v. TransUnion LLC*, No. 20-5227, 2021 U.S. Dist. LEXIS 142220, at *12-13 (E.D. Pa. Jul. 30, 2021) (reasoning that consumers have limited information about furnishers' investigations, so after a consumer notifies a furnisher twice about a "simple error", "[they] will have, *ipso facto,* reasonable grounds *to allege* that [the] agency's procedures are unreasonable") (internal quotation marks and citation omitted); *see also Cortez*, 617 F.3d at 709 (noting "the reasonableness of a credit reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question") (internal quotation marks and citation omitted).

Second, plaintiffs must also make a threshold showing that a tradeline is inaccurate. *See* 15 U.S.C. § 1681. This is supported both by the FCRA's language and Third Circuit precedent. *See id.* (stating furnishers may be sued if they fail to report "accurate information" or reasonably investigate inaccurate tradelines); *see also Seamans*, 744 F.3d at 866 (denying furnisher's motion for summary judgment in part because furnisher failed to show the disputed information was "indisputably accurate and complete"). Courts in this district have also required plaintiffs to make a "threshold showing of inaccuracy or incompleteness." *Ostrander*, 2021 U.S. Dist. LEXIS 142220 at *33-34 (requiring a threshold showing of inaccurate information since it would otherwise be "difficult to satisfy the statutory requirement of [pleading] actual damages"); *Shareef*, 2022 U.S. Dist. LEXIS 64512 at *7-8 (granting motion to dismiss when consumer failed to describe "why" their credit report was inaccurate, which is required to hold furnishers liable

for failing to reasonably investigate) (citation omitted)). Thus, plaintiffs must demonstrate a tradeline is inaccurate in one of two ways: showing the information is (1) "factually incorrect", or (2) "technically correct, [but] it . . . 'create[s] a materially misleading impression'" which adversely affects the plaintiff. *Seamans*, 744 F.3d at 865 (quoting *Saunders v. Branch Banking & Trust Co. Of Va.*, 526 F.3d 142, 148 (4th Cir. 2008)) (explaining that whether information is technically correct but nonetheless misleading is typically a question for the factfinder).

Lastly, plaintiffs must allege facts showing the furnisher's inaccurate tradeline caused the plaintiff's harm. *Seamans*, 744 F.3d at 864-65. Plaintiffs may sue for damages "caused by a furnisher's negligent breach of its duties to consumers[.]" *Id.* at 864. Additionally, a furnisher's "[w]illful noncompliance can result in statutory penalties of up to $1,000 per violation, as well as punitive damages" while a "plaintiff alleging negligent noncompliance can recover only actual damages." *Horsch*, 94 F. Supp. 3d at 678.

## IV.   DISCUSSION

### A. Crisostomo has failed to state a claim under the FCRA

Westlake has filed a motion to dismiss on the grounds that Crisostomo has failed to support his claims with sufficient factual allegations. Crisostomo argues his complaint satisfies a plausible pleading standard, and thus, should survive Westlake's motion. Although Crisostomo has alleged sufficient facts showing (1) he notified the CRAs about a disputed a tradeline and (2) those CRAs notified Westlake, Crisostomo has failed to sufficiently allege (3) his credit report reflects an inaccurate or misleading tradeline, (4) Westlake failed to reasonably investigate or amend the disputed tradeline, and (5) the disputed tradeline caused him harm.

First, Crisostomo sufficiently alleged he notified three CRAs of his dispute by stating, "[P]laintiff sent a letter to the credit reporting agencies (non-parties Experian, TransUnion, and

Equifax) disputing the inaccurate tradeline." Compl. ¶ 14. *Compare Horsch*, 94 F. Supp. 3d at 672-73 (assuming the CRA was notified based on plaintiffs alleging they "requested" the CRA to conduct an investigation since courts must treat all factual allegations as true in a complaint for purposes of a motion to dismiss), *with SimmsParris*, 652 F.3d at 359 (granting motion for summary judgment since consumer failed to provide any notice of dispute to the CRA).

Second, Crisostomo sufficiently alleged these CRA's notified Westlake by stating, "the credit reporting agencies forwarded plaintiffs dispute to Westlake Financial" and "Westlake Financial received Plaintiffs dispute from the credit reporting agencies." Comp. ¶¶ 16-17; s*ee Ostrander,* 2021 U.S. Dist. LEXIS 142220 at *12-13 (assuming factual allegations were true since consumers have limited information about furnishers' investigations).

Third, however, Crisostomo has failed to allege facts showing Westlake's tradeline was inaccurate. In *Shareef v. Capital,* a similar case in this district, the court dismissed the *pro se* plaintiff's complaint in part because the plaintiff, like Crisostomo, failed to make sufficient factual allegations showing a tradeline was inaccurate. *See Shareef*, 2022 U.S. Dist. LEXIS 64512 at *8. The plaintiff in *Shareef* alleged the defendant furnished inaccurate information to a CRA regarding a car transaction. *Id*. at *3-4 (describing which information on the plaintiff's credit report was inaccurate). The court partly dismissed the action because the complaint failed to describe "why" the tradelines were inaccurate. *Id*. at *8. The court reasoned plaintiffs must make a threshold showing of inaccurate information since, "[i]f the information is accurate, the furnisher cannot be liable for their failure to investigate or for an inadequate investigation." *Id*. (citation omitted). Here, Crisostomo's complaint contains even less information than the complaint in *Shareef.* Crisostomo's complaint fails to even identify which collection or charge-off he is referring to, and why it is inaccurate, whereas the complaint in *Shareef* at least identified

the transaction at issue. *Compare id.* at *3-4, *with* Compl. Instead, Crisostomo merely reiterates the legal conclusion that the tradeline was inaccurate. Compl. at ¶ 11, 12, 14, 15, 18, 19, 20*; see also* Resp. to Mot. However, this Court is not required to accept Crisostomo's legal conclusions as true. *Ashcroft*, 556 U.S. at 678 (explaining courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks and citation omitted).

Fourth, Crisostomo has not alleged sufficient facts showing Westlake failed to amend the inaccurate tradeline or conduct a "reasonable" investigation. Crisostomo has not identified which tradeline he is disputing, and so, the Court cannot infer that Westlake failed to amend it. *See Ashcroft*, 556 U.S. at 679 (finding "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'") (citation omitted). Additionally, under the Third Circuit's balancing test, the "reasonableness" of an investigation depends on how much harm may result from the inaccurate tradeline versus how much it would cost the furnisher— here, Westlake—to verify that tradeline. *See Seamans,* 744 F.3d at 865 (citations omitted). Since this balancing test depends on the nature of the inaccurate tradeline, plaintiffs must identify which tradeline is inaccurate. Here, although Crisostomo has described the alleged severity of the inaccuracy, he has failed to both identify *which* tradeline is inaccurate and *how* it is inaccurate. *See* Compl. at ¶ 20; *see also* Resp.

Lastly, fifth, Crisostomo has failed to allege sufficient facts showing the inaccurate tradeline caused him harm. Crisostomo alleges Westlake reported an inaccurate tradeline which caused him "undue stress, shock, anxiety, anger, frustration and other forms of emotional distress," as well as a "loss of sleep, headaches, restlessness, and stomach problems due to . . . [the inaccurate tradeline] and his inability to improve his financial situation by obtaining new or

more favorable credit terms[.]" Compl. at ¶ 20. However, without stating "which" tradeline was inaccurate, or "how," the Court cannot "trace" the alleged inaccuracy to the harm suffered. *See Seamans,* 744 F.3d at 865-66 (finding causation when the plaintiff identified a tradeline which was "directly traceable to Temple's failure to report the Loan's collection history and date of delinquency").

**B.  Crisostomo is granted leave to amend his Complaint**

At this time, the Court cannot determine whether an amendment of the FCRA claims would be futile.  Consequently, and in an abundance of caution given Crisostomo's *pro se* status, the Court affords Crisostomo an opportunity to amend his complaint to cure the deficiencies discussed above.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) (holding that in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment, a court should grant a plaintiff leave to amend a deficient complaint after a defendant moves to dismiss it).

Crisostomo is advised that any "amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  It must be a new pleading which stands by itself without reference to the original complaint.  *Id.*  The amended complaint must not contain conclusory allegations and, instead, must contain sufficient factual allegations regarding the FCRA violation, including specific facts about the alleged inaccurate tradeline, Westlake's failure to investigate, and the connection between this inaccurate tradeline and the harm experienced by Crisostomo.

## V.      CONCLUSION

For the forgoing reasons, Crisostomo has failed to plead sufficient facts showing a plausible FCRA claim.  Therefore, Westlake's motion to dismiss is granted, but Crisostomo is granted leave to amend his complaint.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge